I would like to use ten minutes for my opening argument reserving five minutes for rebuttal. Thank you. Good morning or good afternoon. Janet Mahoney on behalf of the people of the state of Illinois and I expect my argument to be about ten minutes as well. OK. Just so you know, the microphone is for recording purposes. I put this on the Supreme Court website, but it doesn't make your voice any louder. So you need to keep your voices up so the people all the way in the back can hear you. Appreciate it. You may proceed. Thank you. Your leisure. Well, as I said, I represent Larry Luellen. He was convicted of first-degree murder and he was sentenced to 75 years in the Illinois Department of Corrections. As your honors are aware, this was basically a single-finger identification case. The jury found him guilty. There are three issues I raised in the brief, and I want to deal mainly, at least start out with the third issue, which is the issue regarding the judge's handling of three notes from the jurors which came in the middle of trial. As your honors are aware, one of the witnesses, in fact, the eyewitness testified that he was afraid of Larry Luellen and his friends. Immediately after that happened, there was a series of notes from the jurors. The first one expressed, said, if this witness has to be brought in in custody in order to testify that he's that afraid, what about our safety? The judge had suggestions from counsel as to what to do about that. He didn't take the suggestions. He basically gave a speech to the jurors, said, does anybody have any real problem? Nobody raised their hand, and then he went on. But immediately after, this was the end of one of the first days, another note came out saying, again, can you address our concerns? Specifically, we're concerned that the defendant has our names. Well, the second note's a little different, isn't it? My recollection is the second note is my concern. It was from an individual. Correct. So it wasn't the whole jury, but one person, the word my was in that note. Correct. Okay, because you just said we have, you used the plural. That's a good correction, and that is, in fact, what the second note says. So we just have one person saying, I still have concern. I have concern. Now, court was then recessed for the day. The next day, there's another note. The other note, which is most troubling, is signed by a person who identifies himself as the foreman. He names himself. That's the person who actually turned out to be the foreman, if you look at the jury verdict form. And he says, can we speak in private? Can you address this issue? What can you do? Now, at that point, this is basically a similar type of inquiry as to the first note, isn't it? Well, it's a similar inquiry, but it's probably not the same. If you think that the person who wrote the second note was a person who had a specific fear and was hypothetically the person who was removed from the jury because he said he couldn't be fair eventually because he was afraid, the third note can't be from the same person because it's from the foreperson who wasn't removed, who did stat, and became the actual foreperson. So that one has to be written by somebody else. The fact that they may have decided who should write the note, how does that indicate that there was any discussion on the merits? Well. Was there any indication at all that there was discussion on the merits? Well, Your Honor, there is in the first note because the first note says, makes a conclusion about what the witness had testified to. It says, this guy must be really afraid because he has to be brought in. And then from that conclusion, which, again, is conclusion based upon the view that that witness was telling the truth, that he was afraid, he's coming in because he thinks he's being threatened in some way. It is one indication there's a discussion. Now, it's the second indication there's a discussion. The second indication is that they designate a foreperson. I worked both at the time because I was the trial attorney and later to find doing multi-state searches, federal searches, to find a case where there was a designation of a foreperson before there should have been a designation. I couldn't find one. There's nothing that prohibits a jury when they want to do a note to decide who's going to write the note, is there? Well, that question, is there anything that would prohibit that? Well, they were not told not to do it. But on the other hand, as the state points out, a number of the jurors did have prior jury experience. So they would be aware that designating a foreperson is generally something done at the beginning of deliberations because the actual jury instructions say that they get, say, the first thing you do is you designate, you elect a foreperson. As a part of their instructions from the judge prior to these notes, the judge had never instructed that you can't select a foreperson. He had not. He had not. It was an open question. But I think the major claim and the key to the case is this. The case was clear that the judge has discretion to inquire as to whether premature deliberations have begun. Yeah, and that's the point that I actually have questions about. Was there something in the record that demonstrated that the trial judge did not realize that there was discretion to ask questions of the jurors? Very explicitly. And let me quote because I don't want to misquote him. What he said is, quote, and this is on page 251 of the record. He says, making the inquiry, the inquiry into the premature deliberations, would violate the longstanding line of cases regarding impeachment of jury verdicts and the longstanding line of cases regarding jury misconduct. So he believed he had no discretion. Is that what he said? Well, yes. He said, here's. He didn't say I don't have the discretion. I have no discretion. I cannot do it, which is different than saying I read all these cases along these areas and I think it violates those cases. That really doesn't follow the way I look at it. Well, I think it follows because what he says is I can't do it because it would violate cases. Violating cases means I can't do it. I mean, what else does violate mean? It doesn't necessarily mean I have the discretion or I don't have the discretion. I think it means that I don't have the discretion because, again, he didn't say, listen, I've heard what you have to say. I don't think there's a danger of premature deliberations. I'm exercising my discretion. I'm not going into it. Well, you were the trial lawyer. Did you say to the judge, well, Judge, you have discretion. And then the judge probably said, no, I don't. And then I would have some concerns with the judge because I believe that when you don't know you have discretion, you've abused it. I agree. But that's not the case here. It doesn't appear to be. Well, I believe it is. I mean, we brought this up in writing. We cited cases where, in fact, the same cases I've cited now, which said that he did have discretion to inquire into whether there were premature deliberations. One of the things, this is not in the record, but one of the things he mentioned was that he was dealing with another case, some post-conviction case involving impeachment of a verdict. And that might have been on his mind. Now, it didn't make any sense because the long line of cases regarding impeachment of jury verdict couldn't apply because you had no verdict. That was not preventing him. And he said the long-standing line of cases regarding jury misconduct. So the only thing he could have meant was I can't make the inquiry because of a long-winding stand of cases. And he cited two, the ones that were post-trial, which obviously can't apply, and then another one which has not been identified by anyone, including the state, saying regarding jury misconduct. In fact, the state, to their credit, points out that under Rule 606, there is nothing in the rules which prevents a judge from making an inquiry into whether premature deliberations have begun in general. So he does have the discretion. Everybody agrees about that. Well, I think what the judge said ultimately was that there was no evidence of any jury, of any discussion, other than selecting the foreperson. And he didn't consider that to be discussion. So I think that it wasn't that he didn't think he could ask the question. He didn't think there was any evidence of discussion of the case. I think if you read what he says on 251, that's not correct. He says that he doesn't think that he can do it. He can't inquire into whether there's premature deliberations. I mean, I did bring up the fact that a foreperson was designated, and he did say that he thought that, you know, that might mean nothing. Of course, it also might mean something. But the fact is, and I think the record is clear, he didn't believe he could make the inquiry, which I was asking for, I was the trial attorney, very, very specifically. Yeah, but on the other hand, as you acknowledged, the cases that he cites are on different issues and have nothing to do with this issue. Well, he said he could post deliberations and jury misconduct, neither of which is applicable here. Well, jury misconduct cases are potentially applicable if there's premature deliberations. But again, he's saying those along the line of cases prevent me from inquiring as to whether there's premature deliberations. So if he meant anything, he has to have meant that he didn't have the discretion. And he never said on the record, you know, I'm exercising my discretion. I think there's no evidence. No, he said the reason I'm not doing it is because you can't impeach a jury verdict, which makes no sense, and there's a long line of cases not cited by him regarding jury misconduct. So I think the evidence is quite clear that he did not exercise his discretion. He didn't believe he could. He thought there was a rule prohibiting him from making the inquiry, and that's why he didn't make the inquiry. And since he didn't exercise his discretion, the standard review is de novo. And I think that's also acknowledged is not contested by the state. And, in fact, the state does not make an argument in the brief that I read that, in fact, he did exercise discretion, or they don't explain the statement on 251 as your honors have explained it or thought they had explained it. So that's really the key to the case is if he thought he had discretion, it's one thing, but if he didn't, then he didn't exercise it, and the case would have to be reversed and remanded for a new trial. But he's not required to exercise it. He's just simply he's not required to rule the way you want him to rule. He's just required to know that he can do one thing or another. Correct. And then he can choose the action that he's going to take. Correct. That's not an abuse of discretion. That's exercising discretion, actually. Correct. And he didn't exercise discretion because, again, the record shows he didn't believe he had it. And I guess the real question is whether or not that's clear in the record that the judge didn't believe he had the discretion. I think if you read what he said on page 251, the only reasonable conclusion is he did not believe he had discretion. And, again, I mean, he was speaking rather authoritatively. I'm not sure if he referred on the record to the other cases he had been dealing with, but he said he was talking about cases, right, one, cases involving impeachment of jury verdicts, which, of course, we all recognize would at least not be dispositive or on point because there's no verdict, and, second, a longstanding line of cases regarding jury misconduct. And the only lines of cases say that the judge has the authority to inquire into premature deliberations. And in this particular case, in addition, the pattern of events is somewhat troubling because there's three separate notes, there's a designation of a four-person, the concern. Three notes. I mean, so there were three notes. How does that suggest that there was discussion, particularly when one note we know is from an individual? So we really have two notes, which basically say similar things. Well, I mean, one concern is that the first time he addressed and asked anybody to raise their hand, nobody raised their hand. But we do know that, eventually, when there was individual voir dire, there was an individual who- Which was the next day. Next day. Oh, right. The person had time to think about it. But you say the premature designation of a four-person. Again, how does that necessarily arise to any kind of misconduct in the jury, particularly when the jury has an issue that they want to have answered, which is about their safety? Well, in this particular case, it had had experiences, as you said, the state points out, that I think 10 of the 14, including the alternate, had had some experience with the jury system. So with that in mind, they knew the process. They knew the process, but they also knew for the same reason that the jury- that unless there's a whole habit or practice of selecting four persons early, which I'm not aware of, and I've never seen before in any case, published or unpublished, that a four-person is something that's- a person is designated at the time you begin deliberations. That's one of your first jobs. Before you begin deliberations. Correct. Okay, so the fact that somebody has elected a four-person does not mean that any deliberations have started. That is extremely suspicious. Well, you know, yeah, we can say a lot of things about it, but take it at its best from your perspective. Let's just say that- let's say they elected Joe Smith as the four-person. So what? Well, if they elected Joe Smith as the four-person and he was a spokesman for their joint concerns and their joint concerns concerned testimony, then there's a fair chance that they're discussing what the testimony is and not deliberations. But it was testimony that presumably they all heard, that I'm dressed like this because I didn't want to come to court because I'm afraid of or I'm worried about the defendant and his friends. They all heard that. Correct. That doesn't mean they discussed it or got into deliberations on anything. They just all heard the same thing and more than one apparently had a concern about does that apply to us also. Correct. So how does it get into deliberations? Well, it gets into deliberations because it has inherent in that is some sort of assessment that the witness is credible, that this is a reasonable fear, that the defendant might be dangerous, which, of course, a jury that's concluding or thinking about the defendant being dangerous before they have actually heard all the evidence and reached. You were the one that brought it up initially, right, in the opening statement? Not me personally, but my co-counsel, yes. So how does that bear on everything? I mean, you can't take all this in a vacuum. I mean, you have a judge presiding over a jury. The defense brings up the fact that you're going to see somebody in jail guard, mark my words, count on it and go to the bank on it, and then the state is asking a question of why you're dressed like that. Oh, because I don't want the defendant to know that I'm the guy that's testifying against him and his friends know who I am. Common sense would say that the jury did hear it and did consider it and they should have considered it. Well, you're right, but if the question is how they considered it, and since there is a reasonable possibility, not to say in my view a probability, that that could trigger deliberations and conclusions that, number one, the witness was afraid, and, number two, that the defendant was dangerous because, after all, if they didn't think the defendant was dangerous, why would they be concerned for their safety? So that is deliberations. Reaching conclusions about the defendant being dangerous, by definition, is a deliberation on the facts of the case. He said something about his friend, the defendant's friends. Both. Right. So they're not necessarily thinking the defendant might be dangerous to them, but the friends. Both. I mean, both the defendant and his friends are men. What about the fact that the judge was very careful in that he instructed the jury, according to my calculation, ten times that they are not to deliberate before the completion of the evidence. So we tell things to the jury all the time that we expect that they follow. That's presumption. What is there that would show us here that that presumption shouldn't apply? Ten times. And after every one of these notes, and over and over and over again? The presumption is rebutted by a series of notes. Well, a series of notes doesn't necessarily. How does that rebut the presumption? The subject matter of the case says there are notes from a jury, a presumption that the jury is not following. If that was the case, we'd have a lot of rebuttals. Well, I think there's no inference or presumption either way. But since the subject matter was the witness, their board on the witness's credibility, and the dangerousness, potential dangerousness of the defendant, there's a fair assumption that deliberations are being taken place in the subject matter of the cases being discussed. I mean, there's no way to untangle, you know, if they had sent out a note saying, you know, this food from this cafeteria really, really, really sucks. Who cares? I mean, or we need to get our cell phones, we need to call home. I mean, people do that all the time. This was not just some sort of administrative concern. This was a concern for personal safety from the defendant, among other people, and was based upon testimony and testimony they would have to find credible if they were, if it moved them to think they were in personal danger. Do you believe that a jury can believe that a defendant is a dangerous individual and still find him that guilty because the evidence doesn't support the charge? Correct, but it's not as likely. I mean, obviously. How would one know? As long as it's possible, reasonably possible, that jurors can be terrified by a defendant, they still have the capacity to evaluate the evidence and say it's insufficient to prove guilt beyond reasonable doubt. I mean, that's our system, and it happens. It happens, and it is our system, but where there's a suggestion that the defendant is personally dangerous, that is the one kind of piece of evidence, the most destructive of the system, because there's a possibility that the jurors are going to conclude either way, that they don't want to convict the defendant because they're afraid of him, or they do want to convict the defendant because they're afraid of him. But every one of them, except for one, said they could be fair. That did not affect them at all. Some said no, no. I mean, they used different expressions in answer to the question, and only one was kind of here or there, and that individual was dismissed. Well, so that question was asked. We know that they could be fair because the judge asked the individual. Well, I don't think you can reasonably determine whether they were fair unless you know the background question, which is whether they began premature deliberations, and that's the question. And I've got a question you didn't answer. Are those different issues? Absolutely. When the judge asked the lawyers whether or not they had any questions that they wanted the judge to ask the jurors, is that the point at which you asked the court to ask the jurors whether or not they had begun deliberations? Yes. And the judge responded? No. I mean, I think the judge actually, okay, what the judge responded was defense counsel, this is page 251 again. I don't have it right in front of me, but I have my brief so you can look it up. Defense counsel, that's me, then asked the court that the court should inquire of the jurors individually as to whether they had obeyed the instruction not to begin deliberations. The court refused the request, saying that to make the inquiry would violate the law. See, that's not the same thing. The question here is whether or not did you ask the court to ask the jurors? I want to make sure when the judge was speaking what he was responding to, and it's still not clear based on what I'm hearing that the judge was asking, because I do have some concerns if a trial judge does not know that he or she has discretion. That's a problem. And I, regardless of what other people on the panel may think, I think that's an abuse of discretion. And I'm trying to really get there with you if you're there. But right now I'm not seeing it. That's not the question that the judge was responding to. My question to you is whether or not the judge was responding to your question, you asked the judge please inquire of the jury whether or not they had begun deliberating. That's not the question that you just read. It's pretty close. It says whether. In fact, my question is more neutral. It says whether they had obeyed the instruction not to begin deliberations. So I was beginning, like, with the least intrusive question, just jurors, did you obey the instruction not to begin deliberations? That's all at that point I was asking him to ask. And he said I cannot do it. Now, I don't know what's written in your brief right now. I have it in front of me. But we may be on different pages here. But you're saying two different things. One minute you said you asked the court to ask the jury whether or not they had followed the instructions. That's one thing. There's a different question to ask the jury whether or not they had begun deliberations. It seems to me that the judge was responding to the question of whether or not they had followed all the instructions. And that's when the judge said that, well, to ask this question now would be a violation of the long line of cases that prohibit that. I think that's a phrase you used. Prevent me from doing that is what you said. Right. And he was wrong about that because how can it be a violation of any principle about impeachment of verdicts where there is no verdict? Yeah, it was better than that. Yeah. And all that was being asked is ask the jurors individually, not correctively, because we know from this that collective responses didn't necessarily get the right answer, because he tried the collective response method and nobody raised their hand. The question was inquire of each juror as to whether they had obeyed the instruction not to begin deliberations. And if they just said, no, we didn't begin deliberations, he would have satisfied my request. But he said, I can't do it. That doesn't make sense. That's a very neutral. John, you're reading that, that he said, I can't do it. He didn't exactly say that, but we'll figure out what he said. Yeah, I mean, if you look, yeah, without the transcript in front of me, but I think what he definitely refused it on the grounds of a long line of cases regarding impeachment and longstanding line of cases regarding jury misconduct. I mean, he thought there was a case while barring him from asking what was a pretty simple and a pretty neutral question, I think, to ask each juror individually. After all, he asked each juror individually whether they could be fair. But Justice Hyman wanted to talk to me about a different issue, so I. Well, the other different issue was between the two questions on whether they could be fair and the question of whether they started deliberations. Those are different issues. They are different questions, and the question I asked whether they obeyed, which I think is the same as asking whether they had begun premature deliberations, did you obey the instruction not to begin premature deliberations? If they said no, we didn't obey that instruction, then obviously they had begun premature deliberations. With all due respect, Justice Walker, I do think they are the same question. It's the same way of asking, different ways of asking the same question. Did you begin deliberations? Did you obey my instruction not to? And the way I asked him to ask it was actually more favorable to the position that they had, because they would be to say that they disobeyed the instruction. And that may light the problem that you should have been more clear on what your question was, because if we're going to say the judge abused the discretion, we need to know exactly what was the judge responding to. Right. And I think he's responding to a question which is fair, neutral, and gets to the heart of the issue. Did they obey the instruction not to begin deliberations? And if they didn't, then there's a problem, and further inquiry would be required. If they all said yes, no further inquiry. You've had your time, and I'm not going to cut you off, but if there's anything else you might want to go to another point, or you want to? No, I will rest on my greaves to the remaining points. Thank you. Appreciate it. Good afternoon. Janet Mahoney on behalf of the people of the state of Illinois. The question counsel posed for the court to ask the jurors was? Business page 251. Business page 251. The delicate question about whether they have obeyed the instruction not to begin deliberations or discuss the case among themselves would be helpful. The court's response. I disagree completely, and I will tell you why. That gets into the longstanding line of cases regarding impeachment of juror verdicts and the longstanding line of cases regarding juror misconduct. It just so happens on Pupil v. Travis Kujwana, the case that's pending before me right now, I'm wrestling with that issue. And I have done a lot of research on that. That will not be asked. I'm wrestling means he was exercising his discretion. And his discretion was a recognition of what the Illinois Supreme Court stated in Pupil v. Runge, cited in the Pupil's case, and that is in these issues of investigating potential juror misconduct, often less is more. And that is the route that the court took here. Less is more. But I am also going to point you to Pupil v. Runge and say, even if the court didn't realize that he had the discretion to ask that question, even if he didn't know that, it didn't matter because the question the court asked got to the heart of the matter and what due process requires. And that is a jury that's capable and willing of considering the case solely on evidence before. And as the court in Runge stated, the important question is not whether the jurors had discussed the case with one another, but whether each juror kept an open mind until the case was submitted to them. And in this case, the court asked the following question of each juror individually. After assuring them that their safety was paramount and was not a concern in the case, the court asked, given everything you now know, was there anything that would prevent you from giving both sides a fair trial? This court absolutely assessed whether there were any false jurors on the jury, on defendant's jury, whether they had reached a verdict prematurely and ensured that this defendant got a fair trial. So ultimately, at the end of the day, it is the State's position the court exercised his discretion when he stated he was wrestling with that issue and refrained from asking additional questions, but the court got to the heart of the matter. Well, by saying wrestling with the issue, it shows some discretion because of wrestling. If it was, as has been posited by counsel, then you can't wrestle because there's nothing to wrestle with. Correct. Correct. By his saying that, it's an issue that he's thinking about, and it seems to indicate with your argument that that indicates discretion, that he was thinking about his discretion. Less is more, and let's get to the heart of the matter. David, if you've been discussing the facts of the case, can you be fair to both sides until the end? He didn't even assume that because you know why? You are absolutely correct. They were not discussing the facts of the case. The designation of the foreperson here was just as a spokesperson. As stated in our brief, five of the jurors had spent time on the jury before. They were familiar with the instruction not to discuss facts of the case. Before the first note came out, they had been instructed three times not to discuss the facts of the case. As a matter of fact, as they left the courtroom and went back in the jury room and wrote that note out, they had just been instructed not to discuss the facts of the case. So six or seven more times after that. Correct. That they were instructed. So even more so even after that. Correct. And any reference to the witness's fear in this case was incidental to the point of the note. And that was, does the defendant have my name? I'm worried about that. And when the court asked each juror individually, it turned out it was the concern of one juror, which the second note clearly indicated one juror was worried about that. The rest of the jurors actually went out of their way to kind of distance themselves from that when they were asked whether there was anything that would prevent them from being fair, and they were saying, absolutely not, not at all, no. And so in this case, the court did exactly what it needed to do. It ensured that the defendant had a fair trial before a fair tribunal, and that is what due process requires. Unless there are any other questions, the people ask that you affirm defendant's conviction and sentence. Thank you very much. Thank you. Your Honor, I'd like to stay for giving the full context of that. The judge said, first of all, my question, which I think was fair, and went to determining in the least intrusive way whether there had been premature deliberations, he didn't say, well, that might be a good question, but I'm not going to give it. No, he said, I disagree completely. And then he talked about longstanding lines of cases that it would violate. And then he mentioned another case, which, by the way, was a post-conviction case, where, as Your Honors are aware, the judge doesn't exercise discretion. He makes legal rulings which were viewed de novo. So the idea that because he was wrestling with the issue on another case does not mean he was exercising discretion. It means the opposite. It means that based upon his reading of the case law, which was mistaken because he was reading cases involving impeachment of verdicts, not the issue here, he thought he had no discretion. He thought he had no discretion. It's reversible. And for that reason, the wrestling comment, when you view it in context, mandates that this decision where he did not exercise discretion, did not believe he could, must be reversed. So I think this would be different if you had said to the judge, instruct the jury not to write any more notes. The judge would have said, I can't do that. That would have been something different. But in this case, you said, judge, ask the jury this question. He said, I totally disagree with you. If I totally disagree with someone, I'm not — that's not saying to them that I can't do it. It's just saying I don't agree with you that I should do it. I think this case is different, but of course, I want to do a fine tooth comb through the record and see where this takes us. As you ask yourself that question, Your Honor, ask yourself, when he said, I completely disagree, it might have been, I think that's a stupid thing to do, I'm exercising my discretion. Maybe. But that's afterwards he says, it would violate the longstanding line of cases on impeachment of verdicts and on jury misconduct. So he wasn't going based upon discretion or gut feel. He thought and said that he couldn't do it. And that's why. But as Justice Simon just said, the judge said that he was wrestling with this issue. Generally, when someone says they're wrestling with something, that means they're trying to weigh it and decide which way they should go with it. Should you flip this way or flip that way? Yeah. But you have to look at the context. What he was wrestling with was another case, a post-conviction case. He said the issue. That's what I just said. Yeah, but he said he was wrestling with the issue in that post-conviction case. He wasn't saying I was wrestling with the issue here. He was saying I'm thinking about this other case that I have, a post-conviction case, and I'm wrestling with the issue about impeachment of verdicts and how much I can acquire. So that's a totally different issue involving de novo review, not discretion, and supports my point. I mean, he names the case. I would ask your honors to look it up. It wasn't a trial-level case. It wasn't another. It was a post-conviction case involving possible juror misconduct, which, as far as I know, they view for one of the court, one of your honors now. But he named the case. And if I'm wrong and he was talking about some sort of abuse of discretion that he was wrestling with, I'll eat my hat and I'll eat my griefs too. But I'm right. Your honors, check it out, and I would ask you to reverse. Thank you. Thank you. Mr. Richard and Ms. Mahoney, thank you very much. Appreciate your excellent arguments, and I really appreciate the fact that you zeroed in on the issue for us to consider. And thank you for your briefs. We'll take a short break. Stay here so you can – so the next case can be ready.